IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MANSA A. MUNIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 03-305-SLR |
| | ) | |
| RICK KEARNEY, MIKE DELOY, | ) | |
| VERONICA L. BURKE, and | ) | |
| S/LT. M. HENNESSY | ) | |
| | ) | |
| Defendants. | ) | |

Mansa A. Munir, Sussex Correctional Institute, Georgetown, Delaware, Pro Se.

Ophelia M. Waters, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: July 18 , 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

Plaintiff Mansa A. Munir is a Delaware prison inmate incarcerated at the Sussex Correctional Institute ("S.C.I.") in Georgetown, Delaware, and has been at all times relevant to his claim.  On March 19, 2003, plaintiff filed a complaint with leave to proceed in forma pauperis, pursuant to 42 U.S.C. § 1983, against defendants Rick Kearney, Mike Deloy, Veronica L. Burke, and Staff Lieutenant M. Hennessy, alleging violations of the First, Fifth, and Fourteenth Amendments.  (D.I. 2)  Plaintiff seeks compensatory damages in the amount of $30 per month for each month away from employment, punitive damages in the amount of $20,000 for each defendant, and an injunction preventing defendants from interfering with the practice of plaintiff's religion.  (Id.)  Defendants filed motions to dismiss that were treated by this court as motions for summary judgment, as the parties referred to matters outside the pleadings; these motions were denied pending discovery.  (D.I. 19, 28)  A few months later, plaintiff filed a motion for summary judgment that was denied without prejudice to renew at the close of discovery. (D.I. 52, 55)

Pending before the court are the parties' renewed motions for summary judgment with respect to whether or not defendants violated plaintiff's First Amendment right to exercise his

religion.[1]  (D.I. 68; D.I. 53)  On April 29, 2005, the parties
were ordered to supplement the record with respect to plaintiff's
claims under the First Amendment.  (D.I. 78)  Plaintiff filed his
supplement on May 12, 2005.  (D.I. 77)  Defendants filed their
supplement on May 13, 2005.  (D.I. 79)  Plaintiff was permitted
to respond to defendants' supplement and did so on June 27, 2005.
(D.I. 83)

## II.  BACKGROUND

Offenders sentenced to a Delaware prison are evaluated based
on rehabilitation needs and classified to programs "that meet the
offender's designated security level and therapeutic needs."
(D.I. 54, Ex. B)  While at S.C.I., plaintiff was enrolled in the
Transformation through Education, Motivation, and Personal
Orientation Program ("TEMPO Program"), a substance abuse program.
(D.I. 2)  TEMPO is designed to "evoke feelings and identify
behaviors that participants need to address and change."  (D.I.
54, Ex. D at ¶ 2)  Participation requires change through
"education and self reflection."  (Id.)  The program has "24
topic driven groups" and is intended to be a secular program.
(Id. at ¶¶ 3, 5)

---

[1]On April 29, 2004, the court granted defendants' motion for
summary judgment as to plaintiff's claims under the Due Process
clause and the Fourteenth Amendment.  (D.I. 77)  The court also
denied plaintiff's motion as to these two issues.

2

Prison policy requires that all prisoners who are enrolled in a program, such as TEMPO, participate in the program. (D.I. 54, Ex. A)  Any inmate who refuses to participate in the program he is enrolled in will be written up "for Refusal to Participate in Classified Treatment Program." (Id.)  Once written up, he is referred to a disciplinary hearing officer and is no longer eligible for institutional work assignments. (Id.)  On January 11, 2003, plaintiff received a disciplinary report from defendant Veronica Burke, a counselor at S.C.I., for failure to complete an assignment requiring him to think and write about the alternative choices that he could have made prior to being incarcerated and the impact these choices may have had on his life. (D.I. 2)

Plaintiff claims that completing the assignment would be a violation of his religious beliefs.[2] (D.I. 2)  Plaintiff alleges that answering the essay, "knowing the sinful nature in the sight of Allah (God), is willful and blatant disobedience to Allah." (Id.)  In accordance with prison policy, plaintiff appeared before the disciplinary hearing officer, defendant Hennessy, and was found guilty. (D.I. 2)  Plaintiff's request to have resident Imam Shamsidin Ali and/or the Chaplain of S.C.I. present at his hearing was denied. (Id.)  Plaintiff contends that he attempted

_____

[2]Plaintiff contends that answering the question is an act of Shirk (associating others with Allah). (D.I. 2)

3

to show defendant Hennessy the passage in the Qu'ran, which
justifies his reason for not completing the assignment.  (<u>Id.</u>)

Following the disciplinary hearing, plaintiff appealed the
decision to defendant Deloy, the Deputy Warden at S.C.I.  (<u>Id.</u>)
On January 22, 2003, plaintiff received a response stating that
defendant Deloy concurred with the decision of defendant
Hennessy.  (<u>Id.</u>)  Plaintiff alleges that defendant Deloy did not
provide any information on what evidence was used to reach his
decision.  (<u>Id.</u>)  Plaintiff contends that he then presented the
matter to defendant Kearney, the Warden at S.C.I., and was
informed that "there wasn't anything the grievance procedure
could do to address this matter.  The plaintiff would have to
utilize the appeal process, which couldn't address the
procedure[s]."  (<u>Id.</u>)  Upon being found guilty of violating the
rules of the TEMPO Program, plaintiff was transferred from
minimum security to medium security and removed from his job
assignment in the kitchen.  (<u>Id.</u>)

Plaintiff asserts that "each of the defendants [know]
nothing about 'Islam', should [have] consulted a resident [I]mam,
or contacted a visiting Imam from Wilmington, Imam Rudolph Ali."
(<u>Id.</u>)  Plaintiff further asserts that "it is common knowledge
[that] there are double standards at [S.C.I.] when it comes to
muslims and blacks versus white inmates."  (<u>Id.</u>)  Plaintiff also
claims that the "Rules and Regulations [at S.C.I.] are constantly

4

changed [and] re-written, [but] never approved by Commissioner of
Corrections. . . .  Inmates are not provided copies of revisions,
nor . . . informed [about] who made the revisions."  (Id.)
Finally, plaintiff alleges that defendant Hennessy based his
decision of guilt on the fact that many Muslims have completed
the TEMPO Program.  (Id.)  Plaintiff alleges that the TEMPO
Program did not always include the essay portion.  (Id.)
Plaintiff claims the essay was incorporated because Muslim
inmates were complaining about being involved with the religious
aspects of the program, which included reciting the Lord's prayer
at the closing of each session.  (Id.)

**III. STANDARD OF REVIEW**

        A court shall grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The moving party bears the burden of proving that no
genuine issue of material fact exists.  See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).
"Facts that could alter the outcome are 'material,' and disputes
are 'genuine' if evidence exists from which a rational person
could conclude that the position of the person with the burden of
proof on the disputed issue is correct."  Horowitz v. Fed. Kemper

5

Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."  Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**IV.  DISCUSSION**

The First Amendment of the United States Constitution states:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I.  "Prisoners have a constitutional right to free exercise of their religion."  Williams v. Sweeney, 882 F. Supp.

6

1520, 1523 (E.D. Pa. 1995) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987)).  At the same time, "prison officials must be given substantial deference in the administration of their institutions."  Johnson v. Horn, 150 F.3d 276, 282 (3d Cir. 1998).  Therefore, in order for a prisoner to claim that the free exercise of his religion was violated, he must show that a prison rule, regulation or practice was not reasonably related to legitimate penological interests.[3]  See O'Lone, 482 U.S. at 350. To determine reasonableness the Court, in Turner v. Safley, 482 U.S. 78, 89 (1987), identified four factors:

> First, there must be a valid, rational connection
> between the prison regulation and the legitimate
> governmental interest put forward to justify it . . . .
> A second factor relevant in determining the
> reasonableness of a prison restriction . . . is whether
> there are alternative means of exercising the right
> that remain open to prison inmates . . . .
> A third consideration is the impact accommodation of
> the asserted constitutional right will have on guards
> and other inmates, and on the allocation of prison
> resources generally . . . .
> Finally, the absence of ready alternatives is evidence
> of the reasonableness of a prison regulation.

Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003) (citing Turner, 482 U.S. at 89)).  The regulation will be upheld and deemed valid if it fulfills these four factors.  Id.

---

[3]A prisoner will also have to show that his religious beliefs are sincere.  Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000).  As the court noted in its previous memorandum opinion, defendants have stipulated to the fact that plaintiff's beliefs are sincere.  (D.I. 28)

As the court has already found, defendants have established the first Turner factor because they have shown a legitimate penological interest in the TEMPO program.  (D.I. 78)

Defendants' supplement to the record establishes the second Turner factor, which requires consideration of whether plaintiff has alternative means of exercising his religious freedom.  See DeHart, 227 F.3d at 53-57.  This consideration is not limited strictly to the challenged prison policy or program (i.e., the TEMPO program), but requires consideration of how plaintiff can or cannot generally exercise his religious freedom.  See id.; see also, e.g., O'Lone v. Estate of Shabass, 482 U.S. 342, 352 (1987).  Defendants provided an affidavit from SCI's Chaplain, Larry Lilly, attesting to the fact that plaintiff can participate in numerous religious observances, including weekly worship and Jumah Prayer services; he can join in Islamic religious classes; he can pray in his housing unit, keep a personal copy of the Koran, correspond with Islamic members of the community and those that volunteer at SCI, observe the Muslim practice of fasting during Ramadan and participate in the two Muslim feasts following Ramadan.  (D.I. 79, Ex. 1)  Plaintiff does not contest this evidence, nor does he argue that he cannot participate in these activities.

Furthermore, defendants' supplement addresses the third and fourth Turner factors.  The supplement shows that it would be

unduly burdensome to require SCI to provide plaintiff, and other
Muslim inmates, with an alternative essay question.  Terry
Miller, the Master Correctional Counselor at SCI, attested to the
fact that changing essay questions would require substantial
resources and additional SCI staff.  (D.I. 79, Ex. 2)  Staff
would be needed to "formulate and implement each revision that is
demanded" and SCI would have to employ "consultants, experts and
authorities to render services for restructuring the program."
(Id. at ¶ 9)  In addition, such changes would undermine the
rehabilitation and treatment goals of the program because, in
part, these goals are attained through consistent application of
the TEMPO program rules.  (Id.)  Requiring SCI to revise essay
questions upon objection by an inmate could provide the
opportunity for certain inmates to manipulate and undermine the
rehabilitation process for all inmates.  (Id.)

     In light of the burdens that would be placed on defendants
if they were required to change the TEMPO essay questions and the
fact that plaintiff has alternative means for exercising his
religious freedom, the court grants defendants' motion for
summary judgment.

**V.   CONCLUSION**

     For the reasons stated, defendants' motion for summary
judgment is granted as to plaintiff's claims under the First

Amendment.  An order consistent with this memorandum opinion shall issue.